**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 13-42** |
| **REGINALD LAWRENCE** | **SECTION "E"** |

## ORDER AND REASONS

Before the Court is Petitioner Reginald Lawrence's Pro Se Motion for Compassionate Release.[1] For the reasons set forth below, the motion is **GRANTED**.

## BACKGROUND

Reginald Lawrence is currently serving a 126-month sentence for a conviction on one count of possession with intent to distribute 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B).[2] He was sentenced on October 9, 2013.[3] The Government represents he has a projected release date of August 29, 2022.[4] On July 30, 2020, Lawrence filed the instant motion for compassionate release.[5]

Lawrence is 46 years old.[6] According to the Government's search of the Bureau of Prison's website, Lawrence is housed at the Federal Correctional Institution, Williamsburg ("FCI Williamsburg") in Salters, South Carolina.[7] According to Lawrence's motion, he currently is housed at the Federal Correctional Institution, Bennettsville ("FCI

---

[1] R. Doc. 62.
[2] R. Doc. 30 at 3; R. Doc. 36 at 1.
[3] R. Doc. 36.
[4] R. Doc. 64 at 1-2.
[5] R. Doc. 62. The motion was signed June 2, 2020 but was not tendered for filing with the Clerk of the Eastern District of Louisiana until July 30, 2020.
[6] R. Doc. 30 at 4.
[7] *Id.* at 2. As of the time of this decision, FCI Williamsburg has 1 inmate and 8 staff members who have recently tested positive for COVID-19. *COVID-19 Coronavirus (2020)*, U.S. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited September 7, 2020).

Bennettsville") in Marlboro County, South Carolina.[8] The Government provided Lawrence's request for compassionate release which was sent to the FCI Bennettsville warden on April 22, 2020.[9] The request was reviewed and denied by Nanette Barnes, Warden, on July 13, 2020.[10] Lawrence argues the risk of COVID-19's spread and his medical condition (ulcerative colitis), the amount of time he has served, the education he has earned while incarcerated, and his detailed release plans, warrant compassionate release.[11] In support, Lawrence attaches to his motion his individualized reentry plan, with supporting documents, [12] and a copy of his prescription records.[13]

## LAW AND ANALYSIS

18 U.S.C. § 3582(c) provides courts "may not modify a term of imprisonment once it has been imposed," except in limited circumstances.[14] As relevant in this case, 18 U.S.C. § 3582(c)(1)(A)(i) provides courts may, upon motion of a defendant or upon motion of the Director of the Bureau of Prisons, reduce a term of imprisonment, "after considering the factors set forth in [18 U.S.C.] § 3553(a)," if "extraordinary and compelling reasons warrant such a reduction."[15] Lawrence has presented extraordinary and compelling reasons justifying a reduction in his sentence. Further, consideration of the § 3553(a) factors weighs in favor of Lawrence's compassionate release.

## I.   Lawrence has exhausted administrative remedies.

Courts may consider a motion for a reduction in sentence on the basis of

---

[8] R. Doc. 62 at 6. FCI Bennettsville has 67 inmates and 12 staff members who have recently tested positive for COVID-19. *COVID-19 Coronavirus (2020)*, U.S. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited September 7, 2020).
[9] R. Doc. 64-1.
[10] R. Doc. 64-2.
[11] R. Doc. 62 at 3-6.
[12] R. Doc. 62-1 at 1-23.
[13] *Id* at 24-25.
[14] 18 U.S.C. § 3582(c).
[15] *Id*. § 3582(c)(1)(A).

extraordinary and compelling reasons only if the exhaustion requirements of § 3582(c)(1)(A) are met.[16] If a defendant submits a request for compassionate release to the warden of his facility, and thereafter there is a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility,"[17] the exhaustion requirements of § 3582(c)(1)(A) are satisfied, and the Court may consider a motion for compassionate release filed by the defendant. In this case, Lawrence represents he filed a request for compassionate release with the warden on April 22, 2020.[18] The request was denied by Warden Nanette Barnes on July 13, 2020.[19] The Government does not dispute the exhaustion requirements of § 3582(c)(1)(A) are satisfied.[20] Accordingly, the Court assumes Lawrence has properly exhausted his administrative remedies, and the Court will proceed to evaluating Lawrence's request for compassionate release on the merits.

## II. Lawrence has presented "extraordinary and compelling reasons" warranting a reduction in sentence.

According to Section 3582(c)(1)(A)(i), a district court may reduce a defendant's term of imprisonment if the court finds "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[21] The United States Sentencing Commission's relevant policy statement, found in Section 1B1.13 application note 1 of the United States Sentencing Guidelines Manual, sets forth three specific circumstances considered "extraordinary and compelling," as well as a catchall provision:

1. Extraordinary and Compelling Reasons.--Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist

---

[16] *See id.*
[17] *Id.*
[18] R. Doc. 62 at 5.
[19] R. Doc. 64-2.
[20] R. Doc. 64 at 4.
[21] 18 U.S.C. § 3582(c)(1)(A)(i).

under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).[22]

Lawrence bears the burden of establishing his eligibility for a sentence reduction

under § 3582(c)(1)(A)(i).[23] In this case, Lawrence is not suffering a terminal illness and is

---

[22] U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018).
[23] *United States v. Ennis*, EP-02-CR-1430-PRM-1, 2020 WL 2513109, at *4 (W.D. Tex. May 14, 2020)

not yet 65 years old.[24] He does not argue any family circumstances that might warrant a reduction of his sentence. Subsections (A), (B), and (C) are not at issue. Only Subsection (D) of the policy statement is relevant in this case.

Subsection (D) requires a finding of extraordinary and compelling reasons to justify a reduction of sentence. The Court notes the Sentencing Guidelines Manual, last amended on November 1, 2018, contains a policy statement that has not been updated since the passage of the First Step Act on December 21, 2018. The First Step Act amended § 3582(c) to allow not only the BOP but also a defendant to bring a motion arguing extraordinary and compelling reasons warrant a reduction in the defendant's sentence. The policy statement provides, "A reduction under this policy statement may be granted *only upon motion by the Director of the Bureau of Prisons.*"[25] As a result of this clear conflict, there is some dispute as to which portions, if any, of the policy statement should continue to apply to § 3582 after the passage of the First Step Act.[26]

For example, disagreements exist over whether courts may determine what constitutes an extraordinary and compelling reason under the catchall provision in subsection (D). Although the First Step Act amended § 3582(c) to allow a defendant, and not just the BOP, to bring a motion in court arguing extraordinary and compelling reasons warrant a reduction in a defendant's sentence, subsection (D) of the policy statement only

---

("[T]he defendant has the burden to show circumstances meeting the test for compassionate release." (citing *United States v. Stowe*, No. CR H-11-803 (1), 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019))); *United States v. Wright*, Crim. Action No. 16-214-04, 2020 WL 1976828, at *6 (W.D. La. Apr. 24, 2020) (holding the petitioner has the "burden of showing the necessary circumstances, or a combination of circumstances, that would warrant relief under the compassionate release statute").

[24] R. Doc. 66.

[25] *Id.* § 1B1.13 cmt. n.4.

[26] *See, e.g.*, *United States v. Brown* 411 F.Supp.3d 446, 451 (S.D. Iowa Oct. 8, 2019); *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *5 (M.D.N.C. June 28, 2019); *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *5 (S.D. Tex. June 17, 2019); *United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019).

permits the BOP to determine what constitutes "extraordinary and compelling reason[s]."[27] Some courts have questioned why a defendant can bring a motion for compassionate release *in court* if the court cannot decide what amounts to extraordinary and compelling reasons for such release. Those courts have held that, pursuant to the policy goals of the First Step Act, not only the BOP but also courts may now determine what constitutes such "other" extraordinary and compelling reasons. As one court put it, "the only way direct motions to district courts would increase the use of compassionate release is to allow district judges to consider the vast variety of circumstances that may be 'extraordinary and compelling.'"[28] Other courts, however, have not broken from the text of subsection (D) as currently written and have held the BOP alone may determine what qualifies as "other" extraordinary and compelling circumstances.[29]

The Supreme Court has held that "commentary in the [U.S. Sentencing] Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution *or a federal statute*, or is inconsistent with, or a plainly erroneous reading of, that guideline."[30] The most natural way to comprehend the policy statement following the amendments to the First Step Act is to avoid inconsistencies by finding that district courts hold the same discretion as the BOP Director in considering compassionate release motions.[31] It does not stand to reason that courts might be constrained by a policy

---

[27] *See, e.g.*, *United States v. Overcash*, 3:15-cr-263-FDW-l, 2019 WL 1472104, at *2 (W.D.N.C. Apr. 3, 2019) ("The Court agrees that § 3582 now conflicts with § 1B1.13 insofar as a defendant is now able to request a sentence reduction upon a defendant's own motion rather than having to rely on the BOP Director.").
[28] *Brown*, 441 F.Supp.3d at 451.
[29] *United States v. Joseph*, No. CR 15-307, 2020 WL 3128845, at *3 (E.D. La. June 12, 2020) ("The Guidelines also identify a category of '[o]ther [r]easons,' but state that such reasons are '[a]s determined by the Director of the Bureau of Prisons.'").
[30] *Stinson v. United States*, 508 U.S. 36, 38 (1993) (emphasis added).
[31] *See United States v. Gray*, No. 13-cr-11, 2020 WL 5350444, at *4 (W.D. Pa. Sept. 4, 2020) ("the most natural way to synthesize what remains of the Sentencing Commission's old policy statement with the amendments made by the First Step Act is to say that the Court now 'assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it." (citing *Brown*, 411 F.Supp.3d at 451)).

6

statement that limits permissible statutory factors for a sentence reduction. The Court finds the new statute supersedes the policy statement in this respect.

Lawrence argues extraordinary and compelling reasons exist for his compassionate release because of the risks a COVID-19 infection might pose to his health.[32] Lawrence represents he suffers from ulcerative colitis and attaches a prescription record for a drug used to treat this disease.[33] The Government concedes Lawrence has ulcerative colitis, but argues his condition is not severe and is being treated.[34] The U.S. Centers for Disease Control and Prevention ("CDC") identifies ulcerative colitis as "an abnormal response to the body's immune system."[35] While its exact cause is unknown, it is the "result of a defective immune system."[36] The CDC has explained, "[p]eople with weakened immune systems are at higher risk of getting severely sick from [COVID-19], the virus that causes COVID-19."[37]

Other courts have found autoimmune disorders constitute extraordinary and compelling circumstances. In *United States v. McDuffie*, Judge Caproni found "the combination of a once-in-a-lifetime pandemic and an immune system disorder" constituted an extraordinary and compelling circumstance that outweighed the "closer question" of the risk the defendant posed to society.[38] In *United States v. Millage*, Judge Simon found COVID-19 to be particularly dangerous for persons with compromised

---

[32] R. Doc. 62 at 3-4; R. Doc. 62-1 at 4.
[33] R. Doc. 62-1 at 4, 24-25.
[34] R. Doc. 64 at 6-8.
[35] *Inflammatory Bowel Disease (IBD)*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/ibd/index.htm (last visited September 9, 2020).
[36] *Id*.
[37] *If You Are Immunocompromised, Protect Yourself From COVID-19*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/immunocompromised.html (last visited September 9, 2020).
[38] *United States v. McDuffie*, No. 19-CR-212, 2020 WL 1659879, at *3 (S.D.N.Y. Apr. 3, 2020).

immune systems.[39] In *United States v. Osborne*, Judge Jones found the petitioner's autoimmune disease increased the risks of COVID-19.[40]

The Court is persuaded an autoimmune disorder such as ulcerative colitis makes a person particularly vulnerable to severe illness from COVID-19 so as to warrant a finding of "extraordinary and compelling" circumstances. The Court finds Lawrence has established extraordinary and compelling circumstances exist.

### III. Section 3553(a) factors weigh in favor of reducing Lawrence's sentence.

A demonstration of "extraordinary and compelling" circumstances alone is not enough to warrant a reduction in sentence. In evaluating the petitioner's risk of danger to the community, § 3582 requires the Court to weigh the sentencing factors set forth in 18 U.S.C. § 3553(a). The Government does not argue the § 3553(a) factors weigh against a reduction in sentence, nor does it argue Lawrence poses a danger to the safety of the community.[41] Nevertheless, the Court must weigh these sentencing factors before ordering compassionate release.

The policy statement regarding compassionate release states a defendant's sentence may be reduced only if "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and the Court's determination is in line with "the factors set forth in 18 U.S.C. § 3553(a)."[42]

The Court discusses the relevant factors under § 3142(g) and § 3553(a) simultaneously due to the similarity of the factors. Section 3142(g) sets out the factors courts must consider in deciding whether to release a defendant pending trial. The factors

---

[39] *United States v. Millage*, No.13-CR-234-SI, 2020 WL 2857165, at *4-5 (D. Or. June 2, 2020).

[40] *United States v. Osborne*, No. 07-CR-19-2, 2020 WL 3958500, at *1-2 (W.D. Va. July 13, 2020).

[41] *See* R. Doc. 64 at 2-3 (stating the court must consider § 3553(a) factors, but not raising arguments regarding these factors).

[42] U.S. SENTENCING GUIDELINES MANUAL § 1B1.13(2) & cmt. n.1 (U.S. SENTENCING COMM'N 2018).

related to whether a petitioner is danger to the community include "the nature and circumstances of the offense charged," "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."[43] Similarly, § 3553(a), which sets forth the factors to consider in initially imposing a sentence, requires the Court to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.][44]

The nature of petitioner's offense is non-violent. In April 2011, petitioner was arrested by law enforcement following an anonymous tip that he was selling crack cocaine from his home in New Orleans.[45] Law enforcement conducted a sting operation and subsequently executed a search warrant of his residence.[46] 88.09 grams of cocaine base and 21.76 grams of cocaine hydrochloride were confiscated from petitioner's possession.[47] He was not convicted of the use or possession of firearms in connection with the instant

---

[43] 18 U.S.C. § 3142(g).
[44] 18 U.S.C. § 3553(a).
[45] R. Doc. 30 at ¶ 12.
[46] *Id.* at ¶¶ 13-19.
[47] *Id.* at 25.

offense.[48] The sale of drugs are often a "consensual transaction in which violence is not involved [and] the sale itself need not necessarily involve a substantial risk of physical force."[49]

Lawrence was recently disciplined for refusing a work assignment, but he explains he refused to leave the security housing unit, where he had been housed for 11 months, because of his concerns for his "own safety."[50]

Lawrence directs the Court's attention to his use of his time in prison and his plans for the future.[51] He has taken advantage of many educational programs, including introduction to business, business finance, heating and air conditioning, major appliances, drug education, creative writing, and building trades.[52] He intends to apply these skills upon release.[53] Lawrence states his intent to return to work in the HVAC and electrical business, while pursuing other lawful entrepreneurial endeavors upon release.[54]

Lawrence's strong family ties are also appropriate considerations under § 3142(g). In the instant matter, his sister, Raquel Lawrence, will welcome him into her home so that he may "start off fresh and new" in Marietta, Georgia.[55] The Court has received letters from family and loved ones in his support.[56] His mother writes, "He made sure I had everything I needed in the house. He made sure all of my bills were paid."[57] His sister tells

---

[48] R. Doc. 36. According to the Factual Basis, Lawrence was arrested following a traffic stop and subsequent search of his residence. There is no mention of firearms or violence. *See* R. Doc. 21.
[49] *See United States v. Cruz*, 805 F.2d 1464, 1469 (11th Cir. 1986) (considering whether drug trafficking offenses were "crimes of violence" under 18 U.S.C. § 16(b)) (§ 16(b) was later declared unconstitutional (*United States v. Davis*, 139 S.Ct. 2319 (2019)))).
[50] R. Doc. 62-1 at 1.
[51] R. Doc. 62-1 at 5.
[52] *Id.* at 1.
[53] *Id.* at 5.
[54] *Id.* at 4-7. Lawrence states he has written several novels while incarcerated that he hopes to self-publish. He also took a stock investment class while incarcerated, which has inspired him to eventually invest. *Id.*
[55] R. Doc. 62-1 at 3, 5.
[56] R. Doc. 23; R. Doc. 40; R. Doc. 41.
[57] R. Doc. 41.

the Court, "My wish and prayer is that he will not have to sacrifice any more of his life to the prison system."[58]

Courts that have granted compassionate release motions for immunocompromised petitioners have been careful in their consideration of the § 3553(a) factors. In *McDuffie*, the petitioner was caught with an arsenal of firearms and a significant quantity of drugs, but the court still found any potential risk would be adequately managed through home confinement at his brother's residence.[59] In *Millage*, Judge Simon found Millage's time served and participation in educational programs to be indicators of his low risk to society.[60] Similarly, Lawrence provided the court with a listing of the many courses of study he has undertaken while incarcerated.[61] In *Osborne*, Judge Jones found the petitioner's "lengthy sentence already served" to have a satisfactory deterrent effect.[62] Similarly, Lawrence has served a significant portion of his sentence.

Having considered all of the relevant factors under § 3142(g) and § 3553(a), and having weighed the totality of the relevant circumstances, the Court finds the factors weigh in favor of Lawrence's request for compassionate release.

## SENTENCE

Upon finding the petitioner qualifies under the compassionate release statute, the court may reduce the term of imprisonment to time-served.[63] Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the Court finds extraordinary and compelling reasons warrant a reduction of Lawrence's sentence, Lawrence does not pose a danger to any other person or the community, the § 3553(a) factors support a reduction, and the reduction is

---

[58] R. Doc. 23.
[59] *United States v. McDuffie*, No. 19-CR-212, 2020 WL 1659879, at *3 (S.D.N.Y. Apr. 3, 2020).
[60] *United States v. Millage*, No.13-CR-234-SI, 2020 WL 2857165, at *4-5 (D. Or. June 2, 2020).
[61] R. Doc. 62-1 at 1.
[62] *United States v. Osborne*, No. 07-CR-19-2, 2020 WL 3958500, at *1-2 (W.D. Va. July 13, 2020).
[63] U.S.S.G. § 5F1.2; *see* 18 U.S.C. § 3583(d).

11

consistent with currently applicable U.S. Sentencing Commission policy statements.

**IT IS ORDERED** that Reginald Lawrence's Pro Se Motion for Compassionate Release[64] is **GRANTED**. His sentence is reduced to time served and 3 years of supervised release.

The Bureau of Prisons shall place Lawrence in quarantine immediately, so that he may serve a 14-day period of quarantine before his release. Lawrence is to be released from BOP custody on or before Friday, September 25, 2020. The Government shall serve a copy of this Order on the Warden at the appropriate facility immediately.[65]

While on supervised release, Lawrence is subject to all standard and special conditions imposed at sentencing, as modified herein.[66] The following additional special conditions shall apply to the petitioner's term of supervised release:

a. The petitioner shall reside at all times of his supervised release at the home of his sister Raquel Lawrence in Marietta, Georgia;

b. The petitioner is ordered to take all reasonably available precautions against COVID-19 during his travel to Marietta, Georgia, including the use of a mask.

c. The petitioner shall be subject to a curfew at the discretion of his supervising probation officer;

d. The petitioner shall be subject to random telephone check-ins at the discretion of the U.S. Probation Office and any further location monitoring at the discretion of his supervising probation officer. If the Probation Office requires the installation of a hard-wired telephone landline, it shall be promptly

---

[64] R. Doc. 62.
[65] There is some dispute as to where Lawrence is incarcerated, but it appears to be FCI Bennettsville.
[66] R. Doc. 36 at 3-4. Standard Condition of Supervision #1 is hereby modified to read: "1) the defendant shall not leave the State of Georgia without the permission of the court or probation officer." *Id.* at 4.

installed at the expense of Lawrence or a family member.

e.  The petitioner must obey all directives of any public authority relating to protections against the COVID-19 pandemic, including mask-wearing and social distancing.

**New Orleans, Louisiana, this 9th day of September, 2020.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**